UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| MELVA J. SPIVEY,<br><br>        Plaintiff,<br><br>    v.<br><br>JOANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>        Defendant. | No. CV 04-4399 (SH)<br><br>MEMORANDUM DECISION<br>AND ORDER |

       This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned.  The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner.  The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of record, and the parties have filed a joint stipulation. After reviewing the matter, the Court concludes that the decision of the Commissioner must be reversed, and the matter remanded for an order to award  benefits.

On October 23, 2002, Melva J. Spivey protectively filed an application for a period of disability alleging an inability to work since 2001. [AR 57; 265]  Plaintiff alleges disability, beginning January 14, 1997, due to osteoarthritis, depression, ovarian cancer, pain in the joints, legs, back, and neck, memory problems, and a history of drug and alcohol abuse. [AR 16]  After various administrative procedures, an Administrative Law Judge (ALJ) determined that Plaintiff was not disabled within the meaning of the Social Security Act [AR 15-23], and Plaintiff makes three challenges to that determination.

Plaintiff asserts that the ALJ did not properly consider all relevant medical evidence regarding Plaintiff's *mental* impairments and limitations.  Defendant argues that the ALJ's conclusion that Plaintiff had no severe mental impairment is supported by substantial evidence.  The Court agrees.

A "non-severe impairment" is one which does not significantly limit one's capacity to perform basic work-related functions.  See 20 C.F.R. § 416.921 (2005).  A non-severe impairment is a slight abnormality that has no more than a minimal effect on the ability to perform basic work activities.  Social Security Ruling 96-3p.

In determining that Plaintiff had only a non-severe mental impairment, the ALJ principally relied on the report of consultative psychiatric examiner Dr. Parikh. [AR 20, 223-28] Dr. Parikh only diagnosed Plaintiff with a mood disorder due to medical conditions and a history of polysubstance abuse. [AR 227]

Plaintiff argues that the ALJ should have also significantly relied on Dr. Damerla, the consultative psychiatric examiner who examined Plaintiff five months before Dr. Parikh.  While Dr. Damerla also diagnosed Plaintiff with a mood disorder, Dr. Damerla found mild to moderate mental limitations affecting various work related abilities. [AR 177-83] However, the ALJ is responsible for resolving conflicts and analyzing the evidence to determine whether Plaintiff met the statutory definition of

disability (20 C.F.R. § 416.927(e) (2005)), and the ALJ found the findings and opinions of Dr. Parikh more consistent with the medical evidence as well as the opinions of the State Agency reviewing psychiatrists who determined Plaintiff has no severe mental impairment or functional limitations. [AR 192-207] There also were no contrary opinions from any treating or examining source, which is why the ALJ gave great weight to Dr. Parikh rather than Dr. Damerla.

In addition, with regard to Plaintiff's complaints of depression and anxiety, there is no evidence of a longitudinal history of a psychiatric impairment, of repeated hospitalizations, or of prolonged outpatient treatment. [AR 127-76] Furthermore, Plaintiff has never received extensive psychiatric treatment other than the use of anti-depressant medication. [Id.]

The mere existence of a psychiatric disorder is not per se disabling. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Therefore, the Court concludes that the ALJ did properly consider all relevant medical evidence regarding Plaintiff's mental impairments and limitations.[1]

Plaintiff also asserts that the ALJ did not properly consider all relevant medical evidence regarding Plaintiff's *physical* impairments and limitations and that the ALJ did not properly consider and assess Plaintiff's subjective complaints and credibility. Defendant argues that the ALJ properly analyzed Plaintiff's physical limitations and that the ALJ reasonably discounted Plaintiff's credibility. The Court disagrees.

Once the claimant produces objective medical evidence of an underlying impairment, the ALJ may still reject the claimant's excess pain testimony, but only by

---

[1] Plaintiff also asserts, with regard to mental and physical impairments and limitations, that the ALJ committed reversible error by failing to obtain the testimony of a medical expert to resolve the apparent inconsistencies in the medical record. However, the Court finds that the ALJ fully and fairly developed the record, and a medical expert was unnecessary.

setting forth *clear and convincing* reasons for doing so. Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)) (emphasis added). In evaluating a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies within the claimant's testimony or as between her testimony and conduct, the claimant's daily activities, work history, as well as testimony from physicians or third parties concerning the nature, severity, and effect on the symptoms of which the claimant complains. Light, 119 F.3d at 792 (citations omitted). While the ALJ in this case did consider the aforementioned evidence, the ALJ did not set forth *clear and convincing* reasons for finding that Plaintiff's allegations regarding her limitations were not totally credible.[2]

        The ALJ first asserts that Plaintiff's medical treatment has been "routine and conservative," which, according to Johnson v. Shalala, is treatment that may suggest a lower level of pain and functional limitation. See Johnson, 60 F.3d 1428, 1434 (9th Cir. 1995). However, the Court finds that Plaintiff's medical treatment in this case has not been routine and conservative.

        For example, several medical records from the Emergency Department and Clinic at Riverside Regional Medical Center dated from October 2001, through September 2002, indicate that Plaintiff was seen for complaints of bilateral knee pain with decreased range of motion, osteoarthritis exacerbation, anxiety, depression, and acid reflux, for which she was prescribed Vicodin, Zantac, and Buspar. [AR 129-68] Medical Records from the Emergency Department at Parkview Community Hospital dated from October 2001, through October 2003, indicate that Plaintiff was seen for complaints of bilateral knee pain with some tenderness on range of motion, lower back pain, chronic

---

[2] A district court is not permitted to make independent credibility determinations; rather, the court is constrained to review only the reasons the ALJ asserts. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

arthritis, lumbar muscle spasm, abdominal pain, dysuria, a urinary tract infection, a sudden onset of menstrual bleeding, two left ovarian cysts, insomnia, hypertension, intermittent chest pain, and angina pectoris, for which she was prescribed Ativan, Lotensin, Hydrochlorthiazide, Vicoden, Nitroglycerine Sublingual Spray, Benazepril, Macrodantin, Pyridium, Tylenol, Zantac, Premarin, Depakote and other medication. [AR 170-76; 251-61] Given these emergency medical records, Plaintiff's medical treatment cannot be described as routine and conservative and thus not suggestive of a lower level of pain and functional limitation.

The ALJ also asserts that examination findings do not support the level of severity alleged by Plaintiff.[3] [AR 21 ] However, an ALJ may not discredit a claimant's subjective testimony merely because he did not have objective medical evidence to support his testimony regarding the severity of subjective symptoms from which she suffered, particularly pain.[4] Light, 119 F.3d at 792.

The ALJ also asserts that Plaintiff's "testimony and statements in the record are exaggerated and inconsistent with her activities and her own statements to examiners"

---

[3] Specifically, the ALJ found: "no evidence of end organ damage or significant cardiopulmonary problems... [W]hile statements in the record note the claimant has reported complaints of neck and back pain, there is no evidence of even intermittent treatment for complaints of neck pain or pain in any other joints in the upper or lower extremities other than the claimant's knees. The claimant has been seen for abdominal pain, but this appears to be a result of her pelvic pain, and while the claimant has been diagnosed with ovarian cysts and uterine fibroids, there is no evidence of ovarian cancer or treatment for such a diagnosis. Furthermore, while the claimant may have symptoms of depression and anxiety, there is no objective evidence to show that the severity of her symptoms rises to the level of a severe mental condition or functional limitation. The claimant takes psychotropic medication and there is no indication that this has not improve [sic] her symptoms. . . . There is no evidence of treatment for complaints of side effects from medication other than headaches from taking too much Vicoden too often." [AR 21; 109-11; 233-61]

[4] The ALJ stated that Plaintiff "reported she does not take her [psychotropic] medication and the undersigned finds the claimant has failed to follow the advice of her treating physician with respect to her condition." [AR 21] However, this Court finds no such report by Plaintiff. In fact, she testified that she does take medication for her depression and panic attacks and that the medication improves her condition. [AR 276-78]

and that her "daily activities including household chores, driving, shopping, [sic] reflect a physically active and healthy lifestyle and all the aforementioned factors are inconsistent with an incapacitating or debilitating condition at any time since the claimant's alleged onset date." [AR 21] The Court disagrees.

Plaintiff reported in a Daily Activities questionnaire dated November 2002, that she was unable to do anything due to constant pain which caused shortness of breath, weakness, and fatigue, that she was unable to lift or carry anything, and that she needs a cane to assist in ambulation. [AR 86-93] Plaintiff's husband reported in his Third Party Daily Activities questionnaire dated November 2002, that his wife's knee pain had resulted in her difficulty sleeping, and that he does most of the cooking and shopping. [AR 89-100] Plaintiff's friend, Lee Tucker, reported in his Third Party Daily Activities questionnaire dated November 2002, that Plaintiff was unable to do anything due to constant pain. [AR 112-17] While these statements are consistent, the ALJ found them inconsistent with Plaintiff's May 2003 statement to a consultative psychiatric examiner that she does the cooking and shopping with no difficulty completing household tasks. [AR 225] While Plaintiff's statements in the record appear inconsistent with her own statements to examiners, the Court finds that Plaintiff clarifies her impairments and limitations in her questionnaire:

With regard to cooking, Plaintiff cannot cook "something that you must stand [sic] awhile over the stove do to." [AR 86] Either her husband or her prepare and cook meals, which consist of "quick food, things you can pop in microwave." [AR 90]

With regard to grocery shopping, Plaintiff can "walk about a block" but then has to "stop and rub [her] knees at least twice and same thing on the way back. [She] has to walk extremely slow for as not to hurt so much [sic]." [AR 86] She "can't lift anything, not even a bag of groceries" [AR 87] and her joints swell up from too much walking, [AR 90] so "most of the time," her husband does the grocery shopping. [AR 87] Her husband

helps her "when he can because right now he's undergoing therapy for his ring finger that was nearly cut off. He is due to have more surgery within the next 3 or 4 weeks." [AR 90]

With regard to housework, Plaintiff can "dust a little, vacuum a little and wipe off tables." [AR 87] She cannot iron, and she does a "little dish washing." [AR 90] Regarding clothes washing, she needs "someone to take them downstairs to laundry room and back" because she cannot carry the loads. [Id.]  She tries "very slowly to straighten up [her] bed, livingroom, bath, and kitchen" which she finds "very painful." [AR 89] She can clean as long as she does not have to bend, and her husband and grandson help her when they can. [Id.]

With regard to driving, she has a driver's license, but does not own a car at the time. [AR 87] When she does go out, she walks or rides the bus. [AR 91]  She also only leaves the house "when it [sic] absolutely necessary" (ie. to go to the doctor, to pay the bills, and any reason pertaining to her SSI application). [Id.] She belongs to St. James Church of God in Christ in Riverside but has not been able to go in the past few months "due to all the pain." [AR 92]  She spends most of her time making sure she is staying off her legs, as the doctor suggested. [AR 90]

Considering Plaintiff's subjective complaints in her questionnaire, Plaintiff's testimony and statements in the record are not exaggerated or inconsistent with her activities and her own statements to examiners.  Her daily activities do not reflect a physically active and healthy lifestyle.  In addition, disability claimants should not be penalized for trying to lead normal lives despite their limitations.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Plaintiff's statements indicate that her level of activities are not inconsistent with her claimed limitations.   They also are not inconsistent with the statements made by Plaintiff's husband and friend.

Finally, the ALJ asserts that Plaintiff's statements regarding her history of

drug and alcohol is inconsistent with her statements to the consultative examiners.[5] [AR 21] The Court agrees.  However, the Court finds that Plaintiff's inconsistent statements regarding her history of drug and alcohol is not by itself a *clear and convincing* reason for the ALJ to reject Plaintiff's excess pain testimony, especially because her history of drug and alcohol is unrelated to Plaintiff's subjective complaints.

        Accordingly, the matter is reversed and remanded for an order to award benefits.

    IT IS SO ORDERED.

DATED:   August 15, 2005

                              /S/
                              STEPHEN J. HILLMAN
                              UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiff testified at the hearing that she last drank five to six years ago and that she last used marijuana twenty years ago. [AR 285]  However, Plaintiff reported to a consultative examiner in December 2002 that she had cut her drinking down to ½ pint for the past year and that she was using marijuana occasionally. [AR 186]  Plaintiff then reported to a consultative examiner in April 2003 that she had stopped abusing alcohol and drugs. [AR 216-22]